ERIC P. ISRAEL (State Bar No. 132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Ave.
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Successor General Counsel for Brad D. Krasnoff,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>MIRABUX INC.,<br><br>Debtor. | Case No. 2:22-bk-14675-VZ<br><br>Chapter 7<br><br>**TRUSTEE'S MOTION: (1) FOR APPROVAL OF COMPROMISE OF CONTROVERSY WITH ALL DAY REAL ESTATE, LLC, ROBERT AZINIAN AND BAHRAM JAVIDZAD PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND (2) TO ALLOW EXPENSES OF SPECIAL LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF BRAD D. KRASNOFF AND RON HODGES IN SUPPORT THEREOF**<br><br>Date: August 25, 2026<br>Time: 11:00 a.m.<br>Place: Courtroom 1368<br>Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

Brad D. Krasnoff, the chapter 7 trustee ("Trustee") for the bankruptcy estate of Mirabux Inc., debtor herein ("Debtor"), hereby submits this *Motion: (1) for Order Authorizing Compromise of Controversy with All Day Real Estate, LLC, Robert Azinian and Bahram Javidzad Pursuant to*

## TABLE OF CONTENTS

**I. INTRODUCTION .......... 2**

**II. BACKGROUND .......... 3**

**A. The Debtor's Bankruptcy Case and the Action .......... 3**

**B. The Settlement .......... 5**

**III. DISCUSSION .......... 8**

**A. The Court Can and Should Approve the Settlement Agreement .......... 8**

**B. The Settlement Is Fair and Reasonable .......... 9**

**IV. THE COUIRT SHOULD ALLOW COSTS OF SPECIAL COUNSEL .......... 11**

**V. CONCLUSION .......... 12**

**DECLARATION OF BRAD D. KRASNOFF .......... 13**

**DECLARATION OF RON HODGES .......... 17**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re A & C Properties*,
764 F.2d 1377 (9th Cir. 1986) ....................8, 9, 15

*In re Blairu*,
538 F.2d 849 (9th Cir. 1976) ....................9

*Matter of Carla Leather, Inc.*,
44 B.R. 457 (Bankr. S.D. N.Y. 1984)....................8

*In re Carson*,
82 B.R. 847 (Bankr. S.D. Ohio 1987) ....................8

*In re Hydronic Enterprise, Inc.*,
58 B.R. 363 (Bankr. D.R.I. 1986)....................8

*Knowles v. Putterbaugh (In re Hallet)*,
33 B.R. 564 (Bankr. D. Me. 1983) ....................8

*In re Lion Capital Group*,
49 B.R. 163 (Bankr. S.D. N.Y. 1985)....................8

*Matter of Marshall*,
33 B.R. 42 (Bankr. D. Conn. 1983)....................8

*In re Mobile Air Drilling Co., Inc.*,
53 B.R. 605 (Bankr. N.D. Ohio 1985)....................8

*Newman v. Stein*,
464 F.2d 689 (2nd Cir. 1972) ....................9

*In re W.T. Grant & Co.*,
699 F.2d 599 (2nd Cir. 1983) ....................9

*Matter of Walsh Const., Inc.*,
669 F.2d 1325 (9th Cir. 1982) ....................9

**Other State Cases**

*All Day Real Estate, LLC, et al. v. Mirabux, Inc., et al.*,
Case No. 21STCV22369 ....................2, 3, 7, 13

*Federal Rule of Bankruptcy Procedure 9019, and (2) to Allow Expenses of Litigation* ("Motion"). In support of the Motion, the Trustee submits the following memorandum of points and authorities and the attached Declarations of Brad D. Krasnoff ("Krasnoff Declaration") and Ron Hodges ("Hodges Declaration").

**I.**

**INTRODUCTION**

This Motion requests approval of a settlement which resolves a pre-petition lawsuit filed by All Day Real Estate, LLC ("All Day") against the Debtor and the Debtor's principals (which also includes derivative claims of the Debtor against the Debtor's principals) concerning a secured loan in the principal amount of $1 million. The lawsuit was prosecuted for over a year prior to the filing of this case, and for over 3 years after the filing of this case. Under the settlement, the Debtor's principal, Robert Azinian, has agreed to pay $600,000, of which $200,000 will be forgiven if and only if the payments for the initial $400,000 are made and delivered timely. The Debtor's principal, Bahram Javidzad, has agreed to pay $25,000. Under a prior Court-approved agreement, the estate will receive 35% of the total recovery (which equates to $148,750 based on a recovery of $425,000 and $218,750 based on a recovery of $625,000), less one-third of the allowed costs.

The Trustee believes the terms of the settlement are fair and equitable within the facts and circumstances of the pre-petition lawsuit, and in the best interest of the estate and within the sound business judgment of the Trustee. Therefore, the Trustee respectfully requests that the Court approve the settlement.

All fees and costs have already been paid by Court-approved agreement by All Day.

The Trustee requests allowance of the costs of Special Litigation Counsel of $43,373.34 for this engagement, on a final basis. The Trustee further asks the Court excuse the Goe Firm from the need to file a formal final fee application.

/ / /

/ / /

/ / /

/ / /

## II.

## BACKGROUND

### A. The Debtor's Bankruptcy Case and the Action

1. On August 26, 2022, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Brad D. Krasnoff accepted the appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

2. The known potentially administrable assets of the estate were two lawsuits wherein the Debtor asserts claims. One of the lawsuits consists of the present civil action pending in the Superior Court of the State of California for the County of Los Angeles entitled *All Day Real Estate, LLC, et al. v. Mirabux, Inc., et al.*, Case No. 21STCV22369 (the "Action"). All Day commenced the Action by filing a complaint on June 15, 2021 asserting causes of action for 1) breach of contract; 2) breach of guaranty; 3) breach of the implied covenant of good faith and fair dealing; 4) fraud; 5) negligent misrepresentation; 6) breach of fiduciary duty (derivative); and 7) breach of fiduciary duty (direct). The Action include causes of actions asserting derivative claims on behalf of the Debtor against the Debtor's principals (the "Derivative Claims"), including Robert Azinian and Bahram Javidzad.

3. The Trustee substituted into the Action in place of the Debtor, and with Court approval, retained Goe, Forsythe & Hodges, LLP ("Goe Firm" or "Special Counsel") to serve as his special litigation counsel in the Action.

4. Pre-petition, it was the Goe Firm which had initiated the complaint on behalf of its client and plaintiff, All Day. After the filing of this case, the Goe Firm and All Day offered to represent the Trustee as his special litigation counsel to pursue the Action including the Derivative Claims. The Trustee accepted this offer as the Goe Firm was familiar with the legal issues, experienced in handling lawsuits such as the Action and the Derivative Claims, and given the agreement that the estate would not bear any legal fees with the sole source of payment of the Goe Firm's fees and compensation to be All Day.

/ / /

5. More specifically, the Goe Firm agreed to prosecute the Action jointly on behalf of All Day and the estate. All Day agreed to pay the Goe Firm's fees and expenses monthly based upon hourly billings. If there is no recovery, the estate will not be responsible for any of the Goe Firm's fees or costs. If there is recovery, then any recovery is to be divided as follows: (a) 65% to All Day; and (b) 35% to the estate, less one-third of the costs advanced (subject to the entry of an order of the Court allowing the costs). The Court approved the employment of the Goe Firm as the Trustee's special litigation counsel in the Action and the terms of the employment as summarized herein.

6. Briefly, the complaint concerns loan and equity investments made by All Day in connection with the Debtor's build out and operation of two "quick-serve" food and beverage establishments (a Starbucks and Jamba Juice) on the Marine Corp Air Station located in Miramar, San Diego County ("MCAS"). The total amount of capital invested in or monies loaned to the Debtor by All Day over the years following and pursuant to the parties' original agreements was $1 million. Allegedly, after years of construction delays, project overruns and other operational and managerial problems, including that the Debtor had not yet opened the "quick-serve" establishments on the schedule represented to All Day, disputes arose between All Day, the Debtor and the Debtor's principals that led to negotiations and a series of new agreements.

7. On July 31, 2018, All Day and the Debtor entered into an "Amendment and Restatement Agreement" ("Restated Agreement") which, among other things, allegedly converted All Day's previous $1,000,000 investment/loan to a $1,000,000 secured loan, and provided that All Day would purchase 12% of the outstanding common stock of the Debtor from Robert Azinian for $250,000. All Day paid the $250,000 stock purchase price for its 12% interest in the Debtor. Robert Azinian also guaranteed All Day's investment in the Debtor, requiring the return of $250,000 in the event the food establishments were not open for business by a certain date.

8. Concurrently with the Restated Agreement, the Debtor signed a Promissory Note for $1 million with interest accruing at the rate of 7.5% per annum, and an Amended and Restated Security Agreement, of even date ("Security Agreement") granting to All Day a present and continuing security interest in "all of Debtor's right, title and interest in and to all of its properties, rights,

/ / /

contracts, interests, claims and other assets of any nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed" (collectively, the "Collateral").

9. Allegedly, although the Debtor opened the businesses around the promised date, construction had not yet been completed. To exacerbate matters, during the course of its operations, the Debtor became indebted to Starbucks Corp. and MCCS for various reasons. After months of alleged attempts to cure such delinquencies and negotiations with MCCS and Starbucks which failed, the Debtor received a notice of termination of the concession agreement with Starbucks and instructions to vacate the premises. The Debtor filed its bankruptcy case to attempt to avoid the termination of the concession agreement and eviction.

**B. The Settlement**

Following years of litigation and settlement discussions and negotiations, and after participating in a formal mediation, the parties have reached a settlement, which is memorialized in the parties' Settlement Agreement and General Release ("Agreement"), a true and correct copy of which is attached to the Krasnoff Declaration as Exhibit "1:. The salient terms are as follows[1]:

1. ***Bankruptcy Court Approval***. The terms of this Agreement and the effectiveness thereof are contingent upon the entry of an order by the Bankruptcy Court in the Debtor's bankruptcy case approving the Agreement (the "Approval Order"). The Trustee shall file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Debtor's Case seeking such approval (the "Approval Motion") pursuant to the terms set forth in this Agreement.
2. ***Effective Date***. The date on which the Agreement becomes effective (the "Effective Date") shall be the first business day which is more than fourteen (14) calendar days after the date of entry of the Approval Order, provided that no stay of the Approval Order has been granted.
3. ***Settlement Consideration***. As a full and final settlement of all claims that were or that

[1] All capitalized terms used in the following summary of the settlement terms shall refer to the Agreement.

could have been asserted by Plaintiffs or each of them, against Defendants, or any of them, 1) In addition to waiving all rights to purse any claim in the Mirabux, Inc. bankruptcy estate, Azinian shall pay the total sum of Six Hundred Thousand Dollars and Zero Cents ($600,000.00) ("Azinian Settlement Payment") which is received in full satisfaction of any and all monetary claims. Azinian's obligations shall be fully satisfied if the total sum of Four Hundred Thousand Dollars and Zero Cents ($400,000.00) is paid timely consistent with the following schedule: Azinian shall pay Plaintiffs the total sum of Seventy Five Thousand Dollars ($75,000.00) on the date Plaintiffs sign this Agreement. Starting the first business day of the month following the making of the initial payment, Azinian then shall pay Plaintiffs the total sum of Five Thousand Dollars and Zero Cents ($5,000.00) per month for the next thirty six (36) months for a total of One Hundred Eighty Thousand Dollars and Zero Cents ($180,000.00). On the first business day of the thirty-seventh month, Azinian shall pay Plaintiffs a balloon payment in the amount of One Hundred Forty-Five Thousand Dollars and Zero Cents ($145,000.00). All payments to Plaintiffs shall be made payable to "Goe Forsythe & Hodges LLP Client Trust Account" and delivered via overnight mail or other traceable means to their counsel, Ronald S. Hodges at Goe Forsythe & Hodges LLP located at 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614. If Azinian fails to make any of the above referenced payments in a timely manner he shall be responsible to pay the final Two Hundred Thousand Dollars and Zero Cents within thirty (30) calendar days from the first business day of the thirty-seventh month following Plaintiffs' execution of this Agreement. On the other hand, if Azinian makes all payments due under this Agreement in a timely manner, the remaining $200,000.00 shall be deemed forgiven. Azinian hereby agrees to concurrently execute the Security Agreement and corresponding UCC-1 attached collectively hereto as Exhibit A to secure his monetary obligations under this Agreement; and 2) Javidzad shall pay Plaintiffs the total sum of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) ("Javidzad Settlement Payment") payable to "Goe Forsythe & Hodges LLP Client Trust Account" and

delivered via overnight mail or other traceable means to Plaintiffs' counsel, Ronald S. Hodges at Goe Forsythe & Hodges LLP located at 17701 Cowan, Lobby D, Suite 20, Irvine, CA 92614 within five (5) calendar days from the date Plaintiffs sign this Agreement. Notwithstanding any other provision of this Agreement, the Javidzad Settlement Payment constitutes the full and complete extent of his liability and obligations under this Agreement and with respect to the Action. The obligations of Javidzad and Azinian under this Agreement are several and not joint. Javidzad is not a surety or guarantor of, and shall have no liability whatsoever for the Azinian Settlement Payment or any other obligation of Azinian, and no default, breach, or non-payment by Azinian shall create, revive, increase, or reinstate any liability or obligation of Javidzad. Upon receipt of the Javidzad Settlement Payment, Javidzad shall be deemed to have fully and finally satisfied all his obligations under this Agreement and shall have no further liability of any kind to any Party, irrespective of whether Azinian performs or defaults on his obligations.

4. ***Dismissal of the Action***. Within five (5) days of the Effective Date, Plaintiffs will file a Notice of Settlement which will state that the entire Action will be dismissed with prejudice within five (5) calendar days of the date Plaintiffs' counsel receives the initial Azinian Settlement Payments and the Javidzad Settlement Payment per California Rules of Court 3.1385(c). Within five (5) calendar days of the Javidzad Settlement Payment clearing the recipient's account, Plaintiffs' counsel shall file a request for dismissal with prejudice as to Javidzad. Within five (5) calendar days of the initial Azinian Settlement Payment clearing the recipient's account Plaintiffs' counsel shall file a request for dismissal with prejudice that dismisses the Action in its entirety.

5. ***General Releases***. Upon the Effective Date, and with the exception of Azinian's execution of the Security Agreement and UCC-1 and Defendants' obligations under this Agreement, the Parties hereby release and forever discharge each other, and each of them, and all persons and entities that were named or that could have been named as party to the Action including their respective spouses, estates, trustees, agents,

representatives, affiliates, employees, directors, officers, shareholders, affiliates, managers, members, insurers, assigns and attorneys, executors, administrators, heirs, legatees, successors and predecessors from any and all liability of any kind or nature arising out of or in any way relating to any claim that was or that could have been asserted in the Action. As stated above, the release of Javidzad by Plaintiffs is conditioned on the performance of his obligations under this Agreement, and is not affected by any instance of breach by Azinian.

**III.**

**DISCUSSION**

**A. The Court Can and Should Approve the Settlement Agreement**

The authority granting a debtor in possession the ability to compromise a controversy or agree to a settlement is set forth in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which provides in pertinent part that "[o]n the trustee's motion and a hearing, the court may approve a compromise or settlement." The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the court. *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

The Ninth Circuit Court of Appeals has determined that, in considering a proposed compromise, the court must evaluate (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant to it; and (iv) the paramount interests of creditors and a deference to their views. *In re A & C Properties*, 764 F.2d 1377, 1381 (9th Cir. 1986). *See also In re Lion Capital Group*, 49 B.R. 163 (Bankr. S.D. N.Y. 1985); *Matter of Marshall*, 33 B.R. 42 (Bankr. D. Conn. 1983).

A court should not substitute its own judgment for the judgment of the trustee or the debtor in possession. *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984). "It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion

concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is 'doubtful'." *Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). A court, in reviewing a proposed settlement, "is not to decide the numerous questions of law and fact but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *accord, Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *Matter of Walsh Const., Inc.*, 669 F.2d at 1328; *In re Blairu*, 538 F.2d 849 (9th Cir. 1976).

**B. <u>The Settlement Is Fair and Reasonable</u>**

The Agreement comports with the *A & C Properties* standards set forth above and is in the best interests of the Debtor's estate and creditors. The four factors, pursuant to *A & C Properties*, to be considered in reaching the aforementioned conclusion, are as follows:

1. <u>The probability of success in the litigation</u>.

The Trustee believes that the estate has compelling arguments as to the validity of its Derivative Claims against the Debtor's principals, namely, the breach of fiduciary claims. As alleged in the complaint, the Debtor's financial condition at the time it signed the Promissory Note was poor such that the likelihood of opening the food establishments by the promised date was compromised as evidenced by the facts that 1) construction had not been completed, and 2) the Debtor was unable to pay its debts to Starbucks and MCAS causing a termination of the concession agreement and instructions to vacate. The Trustee submits that this factor weighs in favor of approving the Agreement.

2. <u>The difficulties in collection</u>.

The Trustee submits that this factor also weighs in favor of the approving the Agreement. Even if judgments were obtained against the Debtor's principals, seeking to collect on judgments could be difficult, time consuming, and costly as such efforts would undoubtedly require further legal processes. On the other hand, the Agreement provides for an agreed upon schedule of payments of the settled amount. The Trustee is advised an asset search has been done in this case,

and there may be issues with collections. The Trustee submits that this factor weighs in favor of approving the Agreement.

3. The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.

The Action includes numerous claims including Derivative Claims which can be complex, but, more importantly, the estate has no money to fund the defense of the Action and/or the prosecution of the Derivative Claims. The Agreement avoids the expense, inconvenience, and delay attendant to the litigation and assures that the estate will have more money to pay to its creditors.

Moreover, no litigation is without risk. The Trustee has evaluated the potential strengths and weaknesses of the estate's position vis-à-vis the Derivative Claims and entered into the Agreement in an effort to maximize the return to creditors. The Agreement was entered into in good faith and was negotiated at arm's length. This factor supports granting of the Motion.

4. The interests of creditors.

The interests of creditors are best served by the approval of the Agreement. The Agreement is made with the economic purpose of limiting further litigation risks, while ensuring that the estate will have money to pay to creditors. The settlement ensures that the estate will recover $148,750 based on a recovery of $425,000, or $218,750 based on a recovery of $625,000, less one-third of the allowed costs. Absent the Agreement, All Day and the estate may not prevail on their respective claims, and could receive no recovery that will benefit creditors. This factor supports approval of the Motion.

5. Tax Consequences

The Trustee has consulted with his accountants, who advise that the settlement will not trigger adverse tax consequences.

6. Projections for Estate

The Trustee projects, assuming that all of the payments are made, that the estate will receive proceeds of $148,750 as follows:

Settlement proceeds (assuming full payment): $425,000

| | |
|---|---|
| 35% to Trustee | $148,750 |
| Less 1/3rd of costs ($43,373.34) | <$14,457.78> |
| Total projected for estate assuming timely payment in full | $134,292.22 |

**IV.**

**THE COUIRT SHOULD ALLOW COSTS OF SPECIAL COUNSEL**

Special Counsel's employment application [Dkt 24], which was approved by order of the Court [Dkt 27], provides as follows (emphasis added):

> 9. Any recovery will be divided as follows:
>
> (a) 65% to All Day;
>
> (b) 35% to the estate, less one-third of the costs advanced,
>
> 10. The only source of payment of compensation for Goe will be from All Day. However, if there is a recovery, Goe will obtain an order from the Court allowing its costs. No retainer or other ompensation has been paid or will be paid to Goe from the estate.
>
> 11. The payment of attorneys' fees, and the imbursement of any costs and expenses, shall be subject to the terms of this application and the approval of the Bankruptcy Court after the filing by Goe of an appropriate application in compliance with 11 U.S.C. §§ 327 and 330 and Local Bankruptcy Rules.

All Day has been paying the fees and costs of Special Counsel, in accord with the Court-approved agreement between the Trustee and special counsel. Dkt. 27. No payments have been made from, or are proposed to be made from, the estate, so the Trustee is not affected by the amount of fees. Special Counsel advises that its costs for this engagement from the date of employment forward aggregate $43,373.34. The Trustee requests that the Court allow costs in that sum, on a final basis. The Trustee further requests that the Court allow the Goe Firm to forgo filing a formal final fee application;

Because payments are to be made over time, special counsel will pay the Trustee his pro rata percentage as each payment is received.

/ / /

**V.**

**CONCLUSION**

For these reasons, the Trustee respectfully requests that the Court enter an order providing for the following relief:

1. Granting the Motion;

2. Authorizing the Trustee to enter into the Agreement;

3. Approving the terms of the Agreement, a copy of which is attached to the Krasnoff Declaration as **Exhibit 1**;

4. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement;

5. To allow expenses in favor of Special Litigation Counsel of $43,373.34 for the engagement, on a final basis, and excuse their need to file a formal final fee application; and

6. For such other relief as the Court may deem just and necessary.

Dated: August 3, 2026

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: */s/ Eric P. Israel*
ERIC P. ISRAEL
Attorneys for Brad D. Krasnoff
Chapter 7 Trustee

**DECLARATION OF BRAD D. KRASNOFF**

I, Brad D. Krasnoff, hereby declare as follows:

1. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto. All capitalized terms used herein shall have the meanings given in the Motion to which this Declaration is annexed.

2. On August 26, 2022, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. I accepted the appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

3. The known potentially administrable assets of the estate were two lawsuits wherein the Debtor asserts claims. One of the lawsuits consist of the present civil action pending in the Superior Court of the State of California for the County of Los Angeles entitled *All Day Real Estate, LLC, et al. v. Mirabux, Inc., et al.*, Case No. 21STCV22369 (the "Action"). All Day commenced the Action by filing a complaint on June 15, 2021 asserting causes of action for 1) breach of contract; 2) breach of guaranty; 3) breach of the implied covenant of good faith and fair dealing; 4) fraud; 5) negligent misrepresentation; 6) breach of fiduciary duty (derivative); and 7) breach of fiduciary duty (direct). The Action include causes of actions asserting derivative claims on behalf of the Debtor against the Debtor's principals (the "Derivative Claims"), including Robert Azinian and Bahram Javidzad.

4. I substituted into the Action in place of the Debtor, and with Court approval, retained Goe, Forsythe & Hodges, LLP ("Goe Firm") to serve as my special litigation counsel in the Action.

5. Pre-petition, it was the Goe Firm which had initiated the complaint on behalf of its client and plaintiff, All Day. After the filing of this case, the Goe Firm and All Day offered to represent me as my special litigation counsel to pursue the Action including the Derivative Claims. I accepted this offer as the Goe Firm is familiar with the legal issues, experienced in handling lawsuits such as the Action and the Derivative Claims, and given the agreement that the estate would not bear any legal fees with the sole source of payment of the Goe Firm's fees and compensation to be All Day.

6. More specifically, the Goe Firm agreed to prosecute the Action jointly on behalf of All Day and the estate. All Day agreed to pay the Goe Firm's fees and expenses monthly based upon hourly billings. If there is no recovery, the estate will not be responsible for any of the Goe Firm's fees or costs. If there is recovery, then any recovery is to be divided as follows: (a) 65% to All Day; and (b) 35% to the estate, less one-third of the costs advanced (subject to the entry of an order of the Court allowing the costs). The Court approved the employment of the Goe Firm as my special litigation counsel in the Action and the terms of the employment as summarized herein. Dkt 27.

7. Briefly, the complaint concerns loan and equity investments made by All Day in connection with the Debtor's build out and operation of two "quick-serve" food and beverage establishments (a Starbucks and Jamba Juice) on the Marine Corp Air Station located in Miramar, San Diego County ("MCAS"). The total amount of capital invested in or monies loaned to the Debtor by All Day over the years following and pursuant to the parties' original agreements was $1 million. Allegedly, after years of construction delays, project overruns and other operational and managerial problems, including that the Debtor had not yet opened the "quick-serve" establishments on the schedule represented to All Day, disputes arose between All Day, the Debtor and the Debtor's principals that led to negotiations and a series of new agreements.

8. On July 31, 2018, All Day and the Debtor entered into an "Amendment and Restatement Agreement" ("Restated Agreement") which, among other things, allegedly converted All Day's previous $1,000,000 investment/loan to a $1,000,000 secured loan, and provided that All Day would purchase 12% of the outstanding common stock of the Debtor from Robert Azinian for $250,000. All Day paid the $250,000 stock purchase price for its 12% interest in the Debtor. Robert Azinian also guaranteed All Day's investment in the Debtor, requiring the return of $250,000 in the event the food establishments were not open for business by a certain date.

9. Concurrently with the Restated Agreement, the Debtor signed a Promissory Note for $1 million with interest accruing at the rate of 7.5% per annum, and an Amended and Restated Security Agreement, of even date ("Security Agreement") granting to All Day a present and continuing security interest in "all of Debtor's right, title and interest in and to all of its properties, rights,

/ / /

contracts, interests, claims and other assets of any nature whatsoever, wherever located, whether tangible or intangible, real, personal or mixed" (collectively, the "Collateral").

10. Allegedly, although the Debtor opened the businesses around the promised date, construction had not yet been completed. To exacerbate matters, during the course of its operations, the Debtor became indebted to Starbucks Corp. and MCCS for various reasons. After months of alleged attempts to cure such delinquencies and negotiations with MCCS and Starbucks which failed, the Debtor received a notice of termination of the concession agreement with Starbucks and instructions to vacate the premises. The Debtor filed its bankruptcy case to attempt to avoid the termination of the concession agreement and eviction.

11. Following years of litigation and settlement discussions and negotiations, the parties reached a settlement at a formal mediation in which I participated, which is memorialized in the parties' Settlement Agreement and General Release ("Agreement"), a true and correct copy of which is attached hereto, marked as Exhibit "1" and incorporated herein by this reference.. The salient terms of the Agreement are set forth in the Motion to which this Declaration is annexed. True and correct copies of the security agreement and UCC-1 financing statement are attached hereto as Exhibits "2" and "3", respectively, and incorporated herein by this reference.

12. I believe that the Agreement is in the best interests of the estate, meets the *A & C Properties* standards, and should be approved. I believe that the estate has compelling arguments as to the validity of its Derivative Claims against the Debtor's principals, namely, the breach of fiduciary claims. As alleged in the complaint, the Debtor's financial condition at the time it signed the Promissory Note was poor such that the likelihood of opening the food establishments by the promised date was compromised as evidenced by the facts that 1) construction had not been completed, and 2) the Debtor was unable to pay its debts to Starbucks and MCAS causing a termination of the concession agreement and instructions to vacate. This factor supports approving the Agreement.

/ / /

/ / /

/ / /

13. Even if judgments were obtained against the Debtor's principals, seeking to collect on judgments could be difficult, time consuming, and costly as such efforts would undoubtedly require further legal processes. On the other hand, the Agreement provides for an agreed upon schedule of payments of the settled amount. This factor also supports approving the Agreement.

14. The Action includes numerous claims including Derivative Claims which can be complex, but, more importantly, the estate has no money to fund the defense of the Action and/or the prosecution of the Derivative Claims. The Agreement avoids the expense, inconvenience, and delay attendant to the litigation and assures that the estate will have more money to pay to its creditors. Moreover, no litigation is without risk. I have evaluated the potential strengths and weaknesses of the estate's position vis-à-vis the Derivative Claims and entered into the Agreement in an effort to maximize the return to creditors. The Agreement was entered into in good faith and was negotiated at arm's length. This factor supports granting of the Motion.

15. The interests of creditors are best served by the approval of the Agreement. The Agreement is made with the economic purpose of limiting further litigation risks, while ensuring that the estate will have money to pay to creditors. The settlement ensures that the estate will recover $148,750 based on a recovery of $425,000 and $218,750 based on a recovery of $625,000, less one-third of the allowed costs. Absent the Agreement, All Day and the estate may not prevail on their respective claims, and receive no recovery that will benefit creditors. This factor supports approval of the Motion.

16. I have consulted with the estate's accountants, who advise that the settlement will not trigger adverse tax consequences.

17. I have reviewed the cost bill from Special Counsel, which indirectly affects the sum the estate is to receive. I have no objections to those costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2026, at Los Angeles, California.

BRAD D. KRASNOFF

**DECLARATION OF RON HODGES**

I, Ron Hodges, hereby declare as follows:

1. I am a partner in Goe Forsythe & Hodges LLP, the duly employed special litigation counsel for the Trustee in this case. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto. All capitalized terms used herein shall have the meanings given in the Motion to which this Declaration is annexed.

2. I have been counsel of record in the Action for approximately 4 years. I am familiar with the strengths and weaknesses of the case, the witnesses and the defenses asserted. I believe that the proposed settlement is fair and equitable to the Trustee.

3. The settlement was negotiated at arm's length with counsel for the other side following a formal mediation.

4. My firm has incurred costs from the time of its retention by the Trustee to the present in this matter, aggregating $43,373.34. All Day has paid my firm all of the fees and costs after review and approval of the bills by both All Day and its general counsel, and no payment is requested from the estate. I request approval of the costs incurred from and after the retention by the Trustee in the aggregate sum of $43,373.34, on a final basis.

5. I ordered and have seen an asset search for the Defendants, and the results thereof I believe further support the proposed settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2026, at Irvine, California.

RON HODGES

# EXHIBIT "1"

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between All Day Real Estate, LLC ("All Day"), Brad Krasnoff, solely in his capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc. (the "Trustee"), Robert Azinian ("Azinian"), and Bahram Javidzad ("Javidzad") ("All Day" and the "Trustee" are collectively "Plaintiffs"). All Day, the Trustee, Azinian, and Javidzad are sometimes collectively referred to herein as the "Parties" and individually as "Party."

## RECITALS

A. Whereas, there is presently pending in the Superior Court of the State of California for the County of Los Angeles a civil action entitled *All Day Real Estate, LLC, et al. v. Mirabux, Inc., et al.*, Case No. 21STCV22369 (the "Action"). All Day commenced the Action by filing a Complaint on June 15, 2021, asserting causes of action for 1) breach of contract; 2) breach of guaranty; 3) breach of the implied covenant of good faith and fair dealing; 4) fraud; 5) negligent misrepresentation; 6) breach of fiduciary duty (derivative); and 7) breach of fiduciary duty (direct).

B. Whereas, on or about August 6, 2022, Mirabux, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Brad D. Krasnoff accepted appointment as the Chapter 7 Trustee for the Debtor's Estate.

C. The Trustee substituted into the Action in place of Mirabux.

D. Whereas, by entering into this Agreement, none of the Parties admit the allegations or contentions of any other Party, and each Party is entering into this Agreement for the sole purpose of avoiding the expense incident to the Action and to resolve the issues and contentions raised by the Parties.

E. Whereas, due to the passage of time, the vagaries of the judicial process, and the expense of litigation, the Parties are now desirous of fully and finally settling any and all disputes between them and to enter into this Agreement and mutual release agreement as delineated below.

NOW THEREFORE, for and in consideration of the promises, covenants, representations, and warranties contained herein, and for good and valuable consideration given hereunder, the sufficiency of which is hereby acknowledged by the signatories to this Agreement, the parties hereby agree, subject to Bankruptcy Court approval as provided below, as follows:

## TERMS OF SETTLEMENT

1. **Bankruptcy Court Approval**. The terms of this Agreement and the effectiveness thereof are contingent upon the entry of an order by the Bankruptcy Court in the Debtor's bankruptcy case approving this Agreement (the "Approval Order"). The Trustee shall

file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 in the Debtor's Case seeking such approval (the "Approval Motion") pursuant to the terms set forth in this Agreement.

2. **Effective Date**. The date on which the Agreement becomes effective (the "Effective Date") shall be the first business day which is more than fourteen (14) calendar days after the date of entry of the Approval Order, provided that no stay of the Approval Order has been granted.

3. **Settlement Consideration**. As a full and final settlement of all claims that were or that could have been asserted by Plaintiffs or each of them, against Defendants, or any of them, 1) In addition to waiving all rights to purse any claim in the Mirabux, Inc. bankruptcy estate, Azinian shall pay the total sum of Six Hundred Thousand Dollars and Zero Cents ($600,000.00) ("Azinian Settlement Payment") which is received in full satisfaction of any and all monetary claims. Azinian's obligations shall be fully satisfied if the total sum of Four Hundred Thousand Dollars and Zero Cents ($400,000.00) is paid timely consistent with the following schedule: Azinian shall pay Plaintiffs the total sum of Seventy Five Thousand Dollars ($75,000.00) on the date Plaintiffs sign this Agreement. Starting the first business day of the month following the making of the initial payment, Azinian then shall pay Plaintiffs the total sum of Five Thousand Dollars and Zero Cents ($5,000.00) per month for the next thirty six (36) months for a total of One Hundred Eighty Thousand Dollars and Zero Cents ($180,000.00). On the first business day of the thirty-seventh month, Azinian shall pay Plaintiffs a balloon payment in the amount of One Hundred Forty-Five Thousand Dollars and Zero Cents ($145,000.00). All payments to Plaintiffs shall be made payable to "Goe Forsythe & Hodges LLP Client Trust Account" and delivered via overnight mail or other traceable means to their counsel, Ronald S. Hodges at Goe Forsythe & Hodges LLP located at 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614. If Azinian fails to make any of the above referenced payments in a timely manner he shall be responsible to pay the final Two Hundred Thousand Dollars and Zero Cents within thirty (30) calendar days from the first business day of the thirty-seventh month following Plaintiffs' execution of this Agreement. On the other hand, if Azinian makes all payments due under this Agreement in a timely manner, the remaining $200,000.00 shall be deemed forgiven. Azinian hereby agrees to concurrently execute the Security Agreement and corresponding UCC-1 attached collectively hereto as **Exhibit A** to secure his monetary obligations under this Agreement; and 2) Javidzad shall pay Plaintiffs the total sum of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) ("Javidzad Settlement Payment") payable to "Goe Forsythe & Hodges LLP Client Trust Account" and delivered via overnight mail or other traceable means to Plaintiffs' counsel, Ronald S. Hodges at Goe Forsythe & Hodges LLP located at 17701 Cowan, Lobby D, Suite 20, Irvine, CA 92614 within five (5) calendar days after service of notice of entry of the Approval Order. Notwithstanding any other provision of this Agreement, the Javidzad's Settlement Payment constitutes the full and complete extent of his liability and obligations under this Agreement and with respect to the Action. The obligations of Javidzad and Azinian under this Agreement are several and not joint. Javidzad is not a surety or guarantor of, and shall have no liability whatsoever for the Azinian Settlement Payment or any other obligation of Azinian, and no default, breach, or non-payment by Azinian shall create, revive, increase, or reinstate

any liability or obligation of Javidzad. Upon receipt of Javidzad's Settlement Payment, Javidzad shall be deemed to a fully and finally satisfied all his obligations under this Agreement and shall have no further liability of any kind to any Party, irrespective of whether Azinian performs or defaults on his obligations.

4. **Dismissal of the Action.** Within five (5) days of the Effective Date, Plaintiffs will file a Notice of Settlement which will state that the entire Action will be dismissed with prejudice within five (5) calendar days of the date Plaintiffs' counsel receives the initial Azinian Settlement Payments and the Javidzad Settlement Payment per California Rules of Court 3.1385(c). Within five (5) calendar days of the Javidzad Settlement Payment clearing the recipient's account, Plaintiffs' counsel shall file a request for dismissal with prejudice as to Javidzad. Within five (5) calendar days of the initial Azinian Settlement Payment clearing the recipient's account Plaintiffs' counsel shall file a request for dismissal with prejudice that dismisses the Action in its entirety.

5. **General Release.** Upon the Effective Date, and with the exception of Azinian's execution of the Security Agreement and UCC-1 and Defendants' obligations under this Agreement, the Parties hereby release and forever discharge each other, and each of them, and all persons and entities that were named or that could have been named as party to the Action including their respective spouses, estates, trustees, agents, representatives, affiliates, employees, directors, officers, shareholders, affiliates, managers, members, insurers, assigns and attorneys, executors, administrators, heirs, legatees, successors and predecessors from any and all liability of any kind or nature arising out of or in any way relating to any claim that was or that could have been asserted in the Action. As stated above, the release of Javidzad by Plaintiffs is conditioned on the performance of his obligations under this Agreement, and is not affected by any instance of breach by Azinian.

6. **Release of Unknown Claims.** The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides that:

> "A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known to him or her would have materially affected his or her settlement with the debtor or released party."

The Parties hereby waive and relinquish the rights and benefits that they may have under Section 1542 of the California Civil Code, any other California law, or the law of any other state or jurisdiction to the same or similar effect.

The Parties acknowledge the risk that, subsequent to the execution of this Agreement, they may discover, incur, or suffer claims which were unknown or unanticipated at the time that this Agreement is executed which, if known by them on the date that this Agreement is being executed, may have materially affected their decision to execute this Agreement. Plaintiffs expressly assume the risk of such unknown and unanticipated claims and agree that this Agreement and the general release contained herein applies to all such unknown claims.

**7. Representations, Covenants and Warranties by the Parties**. Each of the Parties to this Agreement represent, covenant, warrant to each of the other parties to this Agreement and agrees as follows:

**7.1** Such party has had the opportunity to consult with legal counsel before executing this Agreement and that they understand its meaning and expressly consent that this Agreement shall be given full force and effect according to each and all of its express terms and provisions. Such party enters into this Agreement knowingly and voluntarily in the total absence of any fraud, mistake, duress, coercion, or undue influence and after careful thought and reflection and, accordingly, by signing this Agreement, such party signifies full understanding, agreement, and acceptance.

**7.2** Such party has made such investigation of the facts pertaining to this Agreement and all of the matters pertaining thereto as it deems necessary.

**7.3** Except for the assignment effected by virtue of the Debtor's bankruptcy filing, such party has not assigned, transferred, encumbered, or otherwise impaired their rights to settle the claims released by this Agreement, or the collateral being pledged as security for the Azinian Settlement Payment, and that the Party pledging collateral under this Agreement holds clear and marketable title to said collateral, free and clear of all liens and encumbrances.

**7.4** Such party has engaged no other attorneys to represent it in the Action and no other attorneys are entitled to liens or attorneys' fees on any recovery in the Action.

**7.5** Such party will execute all such further and additional documents, and do all such further acts and things, as shall be reasonable, convenient, necessary, or desirable to carry out the provisions of this Agreement.

**7.6** The officer executing the Agreement on behalf of the respective party has the authority to bind that respective party hereto.

**7.7** Each Party shall be responsible for paying for its own attorneys' fees, costs, liens, and all taxes that might be due as a result of the settlement of the Action. Each Party shall, to the fullest extent allowed by law, defend, indemnify, and hold harmless the other Parties from any and all claims, demands, or causes of action that are asserted against them by virtue of any action or inaction by Defendants with respect to their own obligations to satisfy all obligations due as a result of this Agreement, without exception. For avoidance of all doubt, Javidzad shall have no obligation to defend, indemnify, or hold harmless any Party for any act, omission, obligation, breach or default of Azinian (including the failure of Azinian to make payments due under this Agreement), and Azinian alone shall

defend, indemnify, and hold harmless all other Parties with respect to such act, omission, obligation, breach, or default of Azinian.

**7.8** Except for the express warranties and representations set forth in this Agreement, such party has not relied on any representations or warranties of any other party, or any agent, attorney, officer, director, shareholder, or other representative of any other party, in entering into this Agreement or in making the settlement provided for herein.

**7.9** In the event Plaintiffs foreclose or otherwise obtain title to the collateral pledged in further of Azinian's Settlement Payment and face any claim relating to title, Azinian shall defend, indemnify, and hold harmless Plaintiffs, and each of them, from all costs incurred in asserting or defending their right to title to the collateral, including all attorneys' fees and costs.

**8.** **No Assignment**. The Parties represent to all other parties that there has been no assignment or other transfer of any interest in any claims being released by this Agreement.

**9.** **Mutual Non-Disparagement.** Subject to applicable law, each of the Parties covenants and agrees that neither it nor any of its respective agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors, shall in any way publicly criticize, disparage, call into disrepute, or otherwise defame or slander the other Parties or such other Parties' subsidiaries, affiliates, successors, assigns, officers (including any current officer of a Party or a Parties' subsidiaries who no longer serves in such capacity following the execution of this Agreement), directors (including any current director of a Party or a Parties' subsidiaries who no longer serves in such capacity following the execution of this Agreement), employees, stockholders, agents, attorneys or representatives, or any of their businesses, products or services, in any manner that would reasonably be expected to damage the business or reputation of such other Parties, their businesses, products or services or their subsidiaries, affiliates, successors, assigns, officers (or former officers), directors (or former directors), employees, stockholders, agents, attorneys or representatives. This Section shall not limit the ability of any Party to act in accordance with his or her fiduciary duties or otherwise in accordance with applicable law. Notwithstanding the foregoing, nothing in this Section shall be deemed to prevent any Party from complying with a request for information from any governmental authority with jurisdiction over the Party from whom information is sought, provided that, solely in the case of any disclosure that is proposed or required to appear in any required disclosure relating thereto, such Party must provide written notice, to the extent legally permissible and practicable under the circumstances, to the other Party prior to making any such public disclosure and reasonably consider any comments of such other Party.

**10.** **No Admission of Liability**. The settlement and releases reflected in this Agreement pertain to disputed claims and is the result of compromise. As such, it does not constitute and shall not be deemed an admission of liability by any party.

11. **Costs of Suit**. The Parties agree to bear their own attorneys' fees and costs in the Action. However, in the event any Party initiates an action for breach of this Agreement, the prevailing party shall be entitled to recover his/its reasonable attorneys' fees and costs.

12. **Continuing Jurisdiction**. The parties agree that the Los Angeles County Superior Court shall continue to have jurisdiction to enforce the terms of this Agreement pursuant to California Code of Civil Procedure, Section 664.6. This retention of jurisdiction shall toll and not be affected by any applicable statute, rule or court order affecting timely prosecution of the Action including the 5-year dismissal statute.

13. **California Law**. This Agreement is made and entered into in the State of California and shall in all respects be interpreted and enforced under the laws of the State of California, notwithstanding any choice of law or conflict of law rules.

14. **Construction**. This Agreement shall not be construed against the party or parties whose attorney(s) drafted this Agreement or any portion thereof.

15. **Severance**. If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, such provision shall be deemed to be severed and deleted; neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions of this Agreement.

16. **Integration**. This Agreement (after full execution and delivery) memorializes and constitutes the entire agreement and understanding between the parties and supersedes and replaces all prior negotiations, proposed agreements and agreements, whether written or unwritten. The Parties acknowledge that no other party, nor any agent or attorney of any other party, has made any promise, representation or warranty whatsoever not set forth in this Agreement.

17. **Execution in Counterparts**. To facilitate consummation of this Agreement, it may be executed in counterparts and may do so by email, facsimile or in any number of counterparts, which together shall constitute one instrument.

The Parties have signed below to indicate their acceptance of the terms and conditions of this Agreement as of the Effective Date set forth herein.

**ALL DAY REAL ESTATE, LLC**

**Dated:** 07.13.2026 **By:** 

**Title:** President

**Dated:** ____________ **By:** ______________________

11. **Costs of Suit**. The Parties agree to bear their own attorneys' fees and costs in the Action. However, in the event any Party initiates an action for breach of this Agreement, the prevailing party shall be entitled to recover his/its reasonable attorneys' fees and costs.

12. **Continuing Jurisdiction**. The parties agree that the Los Angeles County Superior Court shall continue to have jurisdiction to enforce the terms of this Agreement pursuant to California Code of Civil Procedure, Section 664.6. This retention of jurisdiction shall toll and not be affected by any applicable statute, rule or court order affecting timely prosecution of the Action including the 5-year dismissal statute.

13. **California Law**. This Agreement is made and entered into in the State of California and shall in all respects be interpreted and enforced under the laws of the State of California, notwithstanding any choice of law or conflict of law rules.

14. **Construction**. This Agreement shall not be construed against the party or parties whose attorney(s) drafted this Agreement or any portion thereof.

15. **Severance**. If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, such provision shall be deemed to be severed and deleted; neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions of this Agreement.

16. **Integration**. This Agreement (after full execution and delivery) memorializes and constitutes the entire agreement and understanding between the parties and supersedes and replaces all prior negotiations, proposed agreements and agreements, whether written or unwritten. The Parties acknowledge that no other party, nor any agent or attorney of any other party, has made any promise, representation or warranty whatsoever not set forth in this Agreement.

17. **Execution in Counterparts**. To facilitate consummation of this Agreement, it may be executed in counterparts and may do so by email, facsimile or in any number of counterparts, which together shall constitute one instrument.

The Parties have signed below to indicate their acceptance of the terms and conditions of this Agreement as of the Effective Date set forth herein.

**ALL DAY REAL ESTATE, LLC**

**Dated:** ________________ **By:** ________________________________

**Title:** ________________________________

**Dated:** July 21, 2026 **By:** [signature] Brad Krashoff

**Dated:** Jul 13, 2026

**By:** Azinian Robert (Jul 13, 2026 17:16:49 EDT)
Robert Azinian

**Dated:** ________________

**By:** ________________
Bahram Javidzad

**APPROVED AS TO FORM AND CONTENT:**

**GOE FORSYTHE & HODGES LLP**

**Dated:** ________________

**By:** ________________
**Ronald S. Hodges, Esq.**
**Attorneys for All Day Real Estate, LLC, and Brad Krasnoff**

**THE LISKEY LAW FIRM**

**Dated:** 7/15/26

**By:** ________________
**Robert J. Liskey, Esq.**
**Attorneys for Robert Azinian**

**ZAKARIAIE & ZAKARIAIE**

**Dated:** ________________

**By:** ________________
**Nilou Zakariaie, Esq.**
**Attorneys for Bahram Javidzad**

Brad Krasnoff, Solely in his Capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc.

**Dated:** ________________ **By:** ______________________________
Robert Azinian

**Dated:** ________________ **By:** ______________________________
Bahram Javidzad

**APPROVED AS TO FORM**

**GOE FORSYTHE & HODGES LLP**

**Dated:** July 23, 2026 **By:** */s/ Ronald S. Hodges*
**Ronald S. Hodges, Esq.**
**Attorneys for All Day Real Estate, LLC, and Brad Krasnoff**

**THE LISKEY LAW FIRM**

**Dated:** ________________ **By:** ______________________________
**Robert J. Liskey, Esq.**
**Attorneys for Robert Azinian**

**ZAKARIAIE & ZAKARIAIE**

Brad Krasnoff, Solely in his Capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc.

**Dated:** ________________ **By:** ______________________________
Robert Azinian

**Dated:** 07/22/2026 **By:** ______________________________
Bahram Javidzad

**APPROVED AS TO FORM**

**GOE FORSYTHE & HODGES LLP**

**Dated:** ________________ **By:** ______________________________
**Ronald S. Hodges, Esq.**
**Attorneys for All Day Real Estate, LLC, and Brad Krasnoff**

**THE LISKEY LAW FIRM**

**Dated:** ________________ **By:** ______________________________
**Robert J. Liskey, Esq.**
**Attorneys for Robert Azinian**

**ZAKARIAIE & ZAKARIAIE**

**Dated:** 07/22/2026 **By:** ______________________

**Nilou Zakariaie, Esq.**
**Attorneys for Bahram Javidzad**

# EXHIBIT "2"

# SECURITY AGREEMENT

This Security Agreement ("Agreement") is entered into by and between All Day Real Estate, LLC ("All Day"), Brad Krasnoff, solely in his capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc. ("the Trustee") and Robert Azinian, including any trust or entity he is affiliated with that owns the collateral described below ("Debtor") ("All Day" and "the Trustee" are collectively "Secured Party"). All Day, the Trustee, and Azinian are sometimes collectively referred to herein as the "Parties" and individually as "Party."

The Parties to this Agreement hereby agree to the following:

1. **Creation of Security Interest.** The Secured Party shall secure the payment and performance of Debtor's Settlement Agreement entered in the matter *All Day Real Estate, LLC, et al. v. Mirabux, Inc., et al.*, Los Angeles County Superior Court Case No. 21STCV22369 ("Settlement Agreement") pursuant to the terms therein and the payment and performance of all other liabilities and obligations of Debtor to Secured Party of every kind and description, direct or indirect, absolute or contingent, due or to become due now existing or hereafter arising. Debtor hereby grants to the Secured Party a security interest in the Collateral described in Paragraph 2 to secure the performance or payment of the Obligations of Debtor to Secured Party under Paragraph 4.

2. **Collateral.** The Collateral of this Security Agreement is as follows:

   **2.1** All of Azinian's right, title and interest in his ownership in the entity known as Hollywood Blvd. Burgers, Inc. dba Wahlburgers.

   **2.2** All of Azinian's right, title, and interest in his ownership in the entity known as JRUCW, Inc.

   **2.3** All of Azinian's right, title, and interest in his ownership in the entity known as JRUCW Pizza, Inc.

   **2.4** All of Azinian's right, title, and interest in his ownership in the entity known as Dogs of Paradise, LLC.

   **2.5** All of Azinian's right, title, and interest in his ownership in the entity known as The Cristcat Group, Inc.

   **2.6** All of Azinian's right, title and interest in his ownership in the entity known as Cristcat Calabasas, Inc.

3. **Security Interest.** Debtor grants to Secured Party a security interest in the Collateral as described in Paragraph 2 now or hereafter placed upon the entities listed in Paragraph 2 or used in connection therewith and in which Debtor now has or hereafter acquires any right and the proceeds wherefrom. Debtor also assigns to

Secured Party a security interest in any other rights or interests in which Debtor now has or hereafter acquires in said entities.

4. **Warrants and Covenants.** Debtor hereby warrants and covenants that: Debtor shall pay to Secured Party the sum or sums evidenced by the Settlement Agreement in accordance with its terms and conditions. Debtor will immediately notify Secured Party in writing of any change in Debtor's address. The Debtor will not sell, dispose, encumber, or otherwise transfer the collateral or any interest therein without the prior written consent of Secured Party, and the Debtor shall keep the collateral free from unpaid charges, taxes, and liens.

5. **Default.** The Debtor shall be in default under this Agreement upon any noncompliance with or nonperformance of the Debtor's obligations under this Agreement or the Settlement Agreement. Upon default and at any time thereafter, Secured Party may declare all obligations secured hereby immediately due and payable and shall have the remedies of a Secured Party under the law.

6. **Waiver.** No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion.

7. **Notices.** Any notices required to be given under this Agreement by either party to the other may be effected by personal delivery in writing or by overnight mail or other traceable means. A notice shall be deemed communicated as of the time of delivery if personally delivered, or as of the time of mailing. The address of the Debtor for the purpose of receiving notice shall be attorney Robert J. Liskey, emailed to robliskey@liskeylawfirm.com, and to Robert Azinian at bobby@ccafoods.com. The address of the Secured Party for this purpose shall be 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614 c/o Ronald S. Hodges and email at rhodges@goeforlaw.com. Either party may change its address for the purpose of receiving notice by giving the other party written notice of the change.

8. **California Law.** This Agreement is made and entered into in the State of California and shall in all respects be interpreted and enforced under the laws of the State of California, notwithstanding any choice of law or conflict of law rules.

9. **Severance.** If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, such provision shall be deemed to be severed and deleted; neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions of this Agreement.

10. **Integration.** This Agreement (after full execution and delivery) memorializes and constitutes the entire agreement and understanding between the parties and supersedes and replaces all prior negotiations, proposed agreements and agreements, whether written or unwritten. The Parties acknowledge that no other

party, nor any agent or attorney of any other party, has made any promise, representation or warranty whatsoever not set forth in this Agreement.

11. **Execution in Counterparts**. To facilitate consummation of this Agreement, it may be executed in counterparts and may do so by email, facsimile or in any number of counterparts, which together shall constitute one instrument.

The Parties have signed below to indicate their acceptance of the terms and conditions of this Agreement as of the Effective Date set forth herein.

**ALL DAY REAL ESTATE, LLC**

**Dated:** 07.21.2026 **By:** ______________________

**Title:** President

**Dated:** 7/21/26 **By:** ______________________
Brad Krasnoff, Solely in his Capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc.

**Dated:** ______________ **By:** ______________________
Robert Azinian

party, nor any agent or attorney of any other party, has made any promise, representation or warranty whatsoever not set forth in this Agreement.

**11. Execution in Counterparts**. To facilitate consummation of this Agreement, it may be executed in counterparts and may do so by email, facsimile or in any number of counterparts, which together shall constitute one instrument.

The Parties have signed below to indicate their acceptance of the terms and conditions of this Agreement as of the Effective Date set forth herein.

**ALL DAY REAL ESTATE, LLC**

**Dated:** ___________________ **By:** ___________________________________

**Title:** ___________________________________

**Dated:** ___________________ **By:** ___________________________________
Brad Krasnoff, Solely in his Capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Mirabux, Inc.

**Dated:** Jul 21, 2026 **By:** Azinian Robert (Jul 21, 2026 20:31:33 EDT)
Robert Azinian

# EXHIBIT "3"

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| Azinian | Robert | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 500 Via Val Verde | Montebello | CA | 91640 | USA |

1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

All Day Real Estate, LLC

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| c/o Ronald S. Hodges, 17701 Cowan, Lobby D, Suite 21 | Irvine | CA | 92614 | |

4. This FINANCING STATEMENT covers the following collateral:

**All of Azinian's right, title and interest in his ownership in the entity known as Hollywood Blvd. Burgers, Inc. dba Wahlburgers.**
**All of Azinian's right, title, and interest in his ownership in the entity known as JRUCW, Inc.**
**All of Azinian's right, title, and interest in his ownership in the entity known as JRUCW Pizza, Inc.**
**All of Azinian's right, title, and interest in his ownership in the entity known as Dogs of Paradise, LLC.**
**All of Azinian's right, title, and interest in his ownership in the entity known as The Cristcat Group, Inc.**
**All of Azinian's right, title and interest in his ownership in the entity known as Cristcat Calabasas, Inc.**

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

# Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read all Instructions, especially Instruction 1; correct Debtor name is crucial. Follow Instructions completely.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. Filing office cannot give legal advice.

Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

When properly completed, send Filing Office Copy, with required fee, to filing office. If you want an acknowledgment, complete item B and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy; otherwise detach. If you want to make a search request, complete item 7 (after reading Instruction 7 below) and send Search Report Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, you are encouraged to use either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP).

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. Complete item B if you want an acknowledgment sent to you. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

1. **Debtor name**: Enter only one Debtor name in item 1, an organization's name (1a) or an individual's name (1b). Enter Debtor's exact full legal name. Don't abbreviate.

1a. Organization Debtor. "Organization" means an entity having a legal identity separate from its owner. A partnership is an organization; a sole proprietorship is not an organization, even if it does business under a trade name. If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine Debtor's correct name, organization type, and jurisdiction of organization.

1b. Individual Debtor. "Individual" means a natural person; this includes a sole proprietorship, whether or not operating under a trade name. Don't use prefixes (Mr., Mrs., Ms.). Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.). Use married woman's personal name (Mary Smith, not Mrs. John Smith). Enter individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box.

For both organization and individual Debtors: Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended).

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Reserved for Financing Statements to be filed in North Dakota or South Dakota only. If this Financing Statement is to be filed in North Dakota or South Dakota, the Debtor's taxpayer identification number (tax ID#) — social security number or employer identification number must be placed in this box.

1e,f,g. "Additional information re organization Debtor" is always required. Type of organization and jurisdiction of organization as well as Debtor's exact legal name can be determined from Debtor's current filed charter document. Organizational ID #, if any, is assigned by the agency where the charter document was filed; this is different from tax ID #; this should be entered preceded by the 2-character U.S. Postal identification of state of organization if one of the United States (e.g., CA12345, for a California corporation whose organizational ID # is 12345); if agency does not assign organizational ID #, check box in item 1g indicating "none."

*Note:* If Debtor is a trust or a trustee acting with respect to property held in trust, enter Debtor's name in item 1 and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a decedent's estate, enter name of deceased individual in item 1b and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a transmitting utility or this Financing Statement is filed in connection with a Manufactured-Home Transaction or a Public-Finance Transaction as defined in applicable Commercial Code, attach Addendum (Form UCC1Ad) and check appropriate box in item 18.

2. If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. To include further additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3. Enter information for Secured Party or Total Assignee, determined and formatted per Instruction 1. To include further additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names. If there has been a total assignment of the Secured Party's interest prior to filing this form, you may either (1) enter Assignor S/P's name and address in item 3 and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Total Assignee's name and address in item 3 and, if you wish, also attaching Addendum (Form UCC1Ad) giving Assignor S/P's name and address in item 12.

4. Use item 4 to indicate the collateral covered by this Financing Statement. If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5. If filer desires (at filer's option) to use titles of lessee and lessor, or consignee and consignor, or seller and buyer (in the case of accounts or chattel paper), or bailee and bailor instead of Debtor and Secured Party, check the appropriate box in item 5. If this is an agricultural lien (as defined in applicable Commercial Code) filing or is otherwise not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 5, complete items 1-7 as applicable and attach any other items required under other law.

6. If this Financing Statement is filed as a fixture filing or if the collateral consists of timber to be cut or as-extracted collateral, complete items 1-5, check the box in item 6, and complete the required information (items 13, 14 and/or 15) on Addendum (Form UCC1Ad).

7. This item is optional. Check appropriate box in item 7 to request Search Report(s) on all or some of the Debtors named in this Financing Statement. The Report will list all Financing Statements on file against the designated Debtor on the date of the Report, including this Financing Statement. There is an additional fee for each Report. If you have checked a box in item 7, file Search Report Copy together with Filing Officer Copy (and Acknowledgment Copy). Note: Not all states do searches and not all states will honor a search request made via this form; some states require a separate request form.

8. This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 8 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **TRUSTEE'S MOTION: (1) FOR APPROVAL OF COMPROMISE OF CONTROVERSY WITH ALL DAY REAL ESTATE, LLC, ROBERT AZINIAN AND BAHRAM JAVIDZAD PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND (2) TO ALLOW EXPENSES OF SPECIAL LITIGATION COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF BRAD D. KRASNOFF AND RON HODGES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 3, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- Ryan J DeRose ryan@parkandlim.com, cathy@parkandlim.com
- Danielle R Gabai dgabai@ecjlaw.com, dgabai@ecf.courtdrive.com;aantonio@ecjlaw.com;dperez@ecjlaw.com
- Robert P Goe rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Eric Everett Hawes eeh@eehlawoffice.com
- Ronald S Hodges rhodges@goeforlaw.com, bbailey@goeforlaw.com,kmccabe@goeforlaw.com
- David B Lally davidlallylaw@gmail.com
- Elan S Levey elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Charity J Manee cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- Sara E Razavi srbklaw@gmail.com, razavisr97687@notify.bestcase.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **August 3, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Zakariaie & Zakariaie
Nilou Zakariaie
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067

The Liskey Law Firm
Robert J. Liskey
117 E Colorado Blvd Ste 600
Pasadena, CA 91105-3712

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** <u>(state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 3, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 3, 2026 | D. Woo | */s/ D. Woo* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |